## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICA FIRST LEGAL FOUNDATION** ) <br><br> *Plaintiff,* ) <br><br> v. ) <br><br> **MERRICK GARLAND**, *Attorney General of the United States, in his official capacity,* ) <br><br> and ) <br><br> **UNITED STATES DEPARTMENT OF JUSTICE**, ) <br><br> *Defendants.* ) | Civil Action No. 1:24-cv-03105 (RJL) |

---

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Merrick Garland, in his official capacity as Attorney General of the United States, and the United States Department of Justice, move to dismiss Plaintiff America First Legal Foundation's Complaint, *see* ECF No. 2, pursuant to Federal Rules 12(b)(1) and 12(b)(6), for the reasons stated in the accompanying memorandum.

Dated: January 6, 2025

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director
Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel
Federal Programs Branch

*/s/Allison M. Walter*
ALLISON M. WALTER
D.C. Bar No. 90008637
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 616-8492
Email: allison.m.walter@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**AMERICA FIRST LEGAL
FOUNDATION**

                *Plaintiff,*

        v.

**MERRICK GARLAND**, *Attorney General
of the United States, in his official capacity,*

and

**UNITED STATES DEPARTMENT OF
JUSTICE**,

               *Defendants.*
_____

Civil Action No. 1:24-cv-03105 (RJL)

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 4

    I.      THE FOREIGN AGENTS REGISTRATION ACT ................................. 4

    II.     AFLF's ALLEGATIONS ................................................................ 6

PROCEDURAL HISTORY ................................................................................ 8

STANDARD OF REVIEW ................................................................................ 8

ARGUMENT ...................................................................................................... 9

    I.      AFLF LACKS STANDING ............................................................ 9

        A.     AFLF Lacks Standing to See that FARA Violations Are Enforced .......... 9

        B.     AFLF Has Failed to Allege a Cognizable Injury ...................................... 11

        C.     Even If AFLF's Injuries Are Cognizable, They Are Not Traceable to DOJ or Redressable by the Court ................................................... 14

    II.     AFLF FAILS TO STATE A CLAIM FOR RELIEF ............................. 15

        A.     DOJ's Enforcement of FARA Is Unreviewable .................................... 15

        B.     AFLF Fails to State a Section 706(1) Claim that DOJ Has Unlawfully Withheld or Unreasonably Delayed Agency Action Because DOJ Is Not Required to Order any Individual to Register under FARA and Is Not Required to Adjudicate Complaints from the Public ............................................................................... 22

        C.     If AFLF Asserts a Separate Section 706(A)(2) Claim, It Should Be Dismissed Because AFLF Has Failed to Allege that any Final Agency Action Has Taken Place ........................................................ 23

CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*Agunbiade v. United States*,
893 F. Supp. 160 (E.D.N.Y. 1995) ........................................................................................ 19

*American Society For Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*,
659 F.3d 13 (D.C. Cir. 2011) ................................................................................................ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 9, 24

*Ass'n of Irritated Residents v. EPA*,
494 F.3d 1027 (D.C. Cir. 2007) ........................................................................................... 22

*Att'y Gen. of the U.S. v. Irish People, Inc.*,
684 F.2d 928 (D.C. Cir. 1982) ..................................................................................... 4, 18, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................... 9, 24

*Bennett v. Spear*,
520 U.S. 154 (1997) .............................................................................................................. 23

*Better Markets, Inc. v. United States Dep't of Just.*,
83 F. Supp. 3d 250 (D.D.C. 2015) ................................................................................... 21, 22

*Bey v. Epstein*,
No. 3:21-cv-901 (KAD), 2021 WL 8155603 (D. Conn. Aug. 6, 2021) ................................ 21

*Budik v. Ashley*,
36 F. Supp. 3d 132 (D.D.C. 2014),
*aff'd*, No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014) ......................................... 8

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
31 F.4th 781 (D.C. Cir. 2022) ............................................................................................... 14

*Citizens for Resp. & Ethics in Wash. v. U.S. Off. of Special Couns.* ("*CREW*"),
480 F. Supp. 3d 118 (D.D.C. 2020) ...................................................................................... 10

*Comm. For a Free Namibia v. S. W. Africa People's Org.*,
554 F. Supp. 722 (D.D.C. 1982) ........................................................................................... 21

*Covington Mills v. Mitchell*,
129 F. Supp. 740 (D.D.C 1955) ............................................................................................ 19

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019) ................................................................................................ 15

*Dickson v. Sec'y of Def.*,
   68 F.3d 1396 (D.C. Cir. 1995) ................................................................................ 19

*Dvoinik v. Rolff*,
   No. 8:23-cv-0623-KKM-CPT, 2023 WL 3276398 (M.D. Fla. May 5, 2023) ......... 21

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
   878 F.3d 371 (D.C. Cir. 2017) ................................................................................ 11

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ................................................................................................ 18

*Free Speech for People v. Fed. Election Comm'n*,
   442 F. Supp. 3d 335 (D.D.C. 2020) ................................................................. 11, 20

*\*Friends of Animals v. Jewell*,
   828 F.3d 989 (D.C. Cir. 2016) ......................................................................... *passim*

*Gant v. FBI*,
   992 F. Supp. 846 (S.D.W. Va. 1998),
   *aff'd*, 155 F.3d 558 (4th Cir. 1998) ....................................................................... 19

*\*Heckler v. Chaney*,
   470 U.S. 821 (1985) ......................................................................................... *passim*

*Kentucky v. Graham*,
   473 U.S. 159 (1985) .................................................................................................. 1

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .................................................................................................. 8

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) .................................................................................. 9

*Linda R. S. v. Richard D.*,
   410 U.S. 614 (1973) ................................................................................................ 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................. 9, 14

*Meng v. Xinhuanet Co.*,
   16 Civ. 6127 (ER), 2017 WL 3175609 (S.D.N.Y. July 25, 2017) ......................... 21

*Norton v. S. Utah Wilderness All. ("SUWA"),
    542 U.S. 55 (2004) ................................................................................................ 3, 23

NTCH, Inc. v. Fed. Commc'ns Comm'n,
    841 F.3d 497 (D.C. Cir. 2016) ................................................................................... 19

Powell v. Katzenbach,
    359 F.2d 234 (D.C. Cir. 1965),
    cert. denied, 384 U.S. 906 (1966) ............................................................................. 16

Sargeant v. Dixon,
    130 F.3d 1067 (D.C. Cir. 1997) ................................................................................. 10

Schmidt v. U.S. Cap. Police Bd.,
    826 F. Supp. 2d 59 (D.D.C. 2011) .............................................................................. 9

Seegars v. Gonzales,
    396 F.3d 1248 (D.C. Cir. 2005) ................................................................................. 14

Sierra Club v. Jackson,
    648 F.3d 848 (D.C. Cir. 2011) .................................................................................... 3

Spokeo, Inc. v. Robins,
    578 U.S. 330 (2016) .................................................................................................... 9

TransUnion LLC v. Ramirez,
    594 U.S. 413 (2021) .................................................................................................. 16

Trudeau v. Fed. Trade Comm'n,
    456 F.3d 178 (D.C. Cir. 2006) ................................................................................ 3, 23

U.S. ex rel. Tyler v. U.S. Att'y,
    No. 8:07CV361, 2007 WL 3028420 (D. Neb. Oct. 16, 2007) ................................... 19

United States v. Craig,
    401 F. Supp. 3d 49 (D.D.C. 2019) .............................................................................. 4

United States v. Nixon,
    418 U.S. 683 (1974) .................................................................................................. 16

*United States v. Texas,
    599 U.S. 670 (2023) ...........................................................................................passim

Whittle v. Moschella,
    756 F. Supp. 589 (D.D.C. 1991) ............................................................................... 19

*Wightman-Cervantes v. Mueller*,
750 F. Supp. 2d 76 (D.D.C. 2010) ........................................................... 19

*XP Vehicles, Inc. v. Dep't of Energy*,
118 F. Supp. 3d 38 (D.D.C. 2015) ............................................................. 9

**CONSTITUTIONAL LAW**

U.S. Const., art. II, § 1 ........................................................................... 11

U.S. Const., art. II, § 3 ........................................................................... 11

**STATUTES**

5 U.S.C. §§ 701 *et seq.* ............................................................................ 2

5 U.S.C. § 701 ....................................................................................... 15

5 U.S.C. § 704 ....................................................................................... 23

5 U.S.C. § 706 ..................................................................................... 3, 8

16 U.S.C. § 1533 .................................................................................... 20

22 U.S.C. § 611 ............................................................................... 4, 5, 16

22 U.S.C. § 612 .......................................................................... 4, 6, 16, 17

22 U.S.C. § 613 ....................................................................................... 5

22 U.S.C. § 614 ..................................................................................... 11

22 U.S.C. § 616 ............................................................................. 1, 19, 20

22 U.S.C. § 618 ........................................................................ 6, 15, 18, 19

28 U.S.C. § 535 ..................................................................................... 22

52 U.S.C. § 30109 .............................................................................. 20, 21

**RULES**

Fed. R. Civ. P. 12 ................................................................................ 3, 9

**REGULATIONS**

11 C.F.R. § 111.9 ................................................................................................ 21

28 C.F.R. § 0.72 ................................................................................................... 6

28 C.F.R. § 5.1 ..................................................................................................... 6

28 C.F.R. § 5.2 ................................................................................................... 13

28 C.F.R. § 5.202 ........................................................................................... 6, 17

28 C.F.R. § 5.209 ............................................................................................... 20

28 C.F.R. § 5.210 ............................................................................................... 20

28 C.F.R. § 5.300 ......................................................................................... 6, 20

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (2012) .... 20

## INTRODUCTION

It is a bedrock principle of administrative law that courts may not review "an agency's decision not to prosecute or enforce, whether through civil or criminal process," because such decisions are "generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Yet Plaintiff America First Legal Foundation ("AFLF") seeks a court order that would run headlong into this principle. By requesting an order compelling Defendants to require American Muslims for Palestine ("AMP"), National Students for Justice in Palestine ("NSJP"), Osama Abuirshaid, Hatem Bazian, and Westchester People's Action Coalition Foundation ("WESPAC") "to register as foreign agents in compliance with the Foreign Agent[s] Registration Act," Compl. for Inj. & Declaratory Relief, Prayer for Relief ¶ A, ECF No. 2 ("Compl."), AFLF asks the Court to superintend the Executive Branch's enforcement authority despite *Heckler*'s long-standing prohibition against doing so. AFLF asserts that this case is not about prosecutorial discretion—that the Department of Justice ("DOJ") has a mandatory duty to force these groups and individuals to register as foreign agents.[1] Compl. ¶ 62. Regardless of the merits of AFLF's assertion that there is a sufficient basis to conclude that these groups and individuals are required to register, neither FARA nor its regulations impose such a duty on DOJ. Because DOJ's FARA enforcement decisions are committed to DOJ's discretion and are not subject to judicial review, the Court should dismiss this case.

In any event, AFLF lacks standing and therefore the Court lacks jurisdiction. AFLF avers that it has informational standing, but to carry its burden, AFLF must show that it seeks to enforce a statutory provision that entitles it to certain information, which here is the information FARA

---

[1] AFLF sued Attorney General Garland in his official capacity. Compl. ¶ 17. Such suits are "to be treated as a suit against the [agency]." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

requires to be disclosed when an individual registers as a foreign agent. But the only FARA *disclosure* provision that AFLF seeks to enforce, 22 U.S.C. § 616(d), requires DOJ to disclose information obtained from an individual *after* they register. Because these groups and individuals have not registered as foreign agents, there is no disclosable information to which AFLF has a right. Rather, FARA's public disclosure provisions come into force only after (1) the individual or entity registers voluntarily or (2) a court order requires such registration following a civil or criminal enforcement action, *i.e.*, *after* DOJ determines that a cause of action is warranted and prevails. AFLF alleges that other FARA provisions, either by themselves or in combination, impose nondiscretionary duties on DOJ to release information to AFLF, but none of those provisions require DOJ to disclose information prior to an individual's or entity's registration. Accordingly, AFLF has suffered no informational injury. *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

Furthermore, even if such an injury existed, it would not be traceable to DOJ or redressable by this Court. DOJ is not the entity that is required to register under FARA, DOJ is not alleged to have impeded any individual or entity from registering as a foreign agent, and DOJ is not alleged to be withholding registration materials that FARA requires it to disclose. Nor would AFLF's alleged injury be redressed by the relief it seeks. To "require" registration is not a simple administrative act. Instead, were DOJ to *seek* to require an individual or entity to register, it could only do so—absent the individual's or entity's consent—by filing an enforcement action in federal court. That process imposes insurmountable redressability obstacles for AFLF, because it implicates the future conduct and decisions of third parties, including the defendant in the enforcement action and the court assigned to adjudicate it. An order from this Court mandating that DOJ require AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register, which is the relief

AFLF has requested, could not supplant that constitutionally guaranteed process and therefore could not effectuate the outcome AFLF seeks.

Even if the Court had jurisdiction, it should dismiss this case because AFLF's allegations under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq*., do not state a claim upon which relief can be granted. As stated above, AFLF's Complaint improperly invites the Court to intrude on DOJ's unreviewable enforcement discretion, which, on its own, requires dismissal under *Heckler*.[2] In addition, AFLF's primary allegation is that AFLF submitted a self-styled "complaint" to DOJ regarding AMP, NSJP, Abuirshaid, Bazian, and WESPAC on August 16, 2024, and that DOJ has "unlawfully withh[eld] or unreasonably delay[ed]" agency action by failing to require these groups and individuals to register as foreign agents under FARA. Compl. ¶ 63; 5 U.S.C. § 706(1). But neither FARA nor its regulations require DOJ to pursue any individual's registration; nor is DOJ required to take any action in response to a "complaint" alleging FARA violations. Because DOJ is not required to take any enforcement actions under FARA, and because a § 706(1) claim can only survive if a plaintiff alleges that an agency has failed "to take a *discrete* agency action that it is *required to take*," *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004) (emphasis added), AFLF's § 706(1) claim fails.

AFLF's other APA claim—that DOJ's alleged inaction is arbitrary and capricious under 5 U.S.C. § 706(2)(A), Compl., Prayer for Relief ¶ B—also fails because AFLF has not alleged that DOJ has taken a final agency action, which is a prerequisite to any claim under the APA. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188-89 (D.C. Cir. 2006) (noting that "the absence of final agency action . . . cost [plaintiff] his APA cause of action"). AFLF has alleged in

---

[2] While some courts treat such a defense as a jurisdictional question under Fed. R. Civ. P. 12(b)(1), the D.C. Circuit considers it under Fed. R. Civ. P. 12(b)(6). *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).

conclusory terms that DOJ has chosen not to enforce FARA against AMP, NSJP, Abuirshaid, Bazian, and WESPAC, but sets forth no allegations that plausibly suggest that DOJ has made any final enforcement decision.  And again, even if DOJ has, such decisions are unreviewable under *Heckler*.  Further, AFLF has not alleged a factual basis sufficient to support its § 706(2)(A) claim.

For these reasons, the Court should dismiss AFLF's Complaint, ECF No. 2.

## BACKGROUND

## I.    THE FOREIGN AGENTS REGISTRATION ACT

The Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. §§ 611-621 ("FARA" or "the Act"), requires that agents of foreign principals register with the Attorney General and make certain disclosures in registration filings concerning their agency relationships and activities performed within the United States on behalf of their respective foreign principals.  22 U.S.C. § 612(a).  Among the chief purposes of FARA is to "prevent covert influence over U.S. policy by foreign principals."  *United States v. Craig*, 401 F. Supp. 3d 49, 54 (D.D.C. 2019).  "[T]he statute ensures that the public is informed of the true source or sponsor behind the information being disseminated for its consideration."  *Id.*  It was "inspired by national security, international political, and foreign policy considerations," and its "design and use . . . has reflected the evolving concerns of American foreign policymakers."  *Att'y Gen. of the U.S. v. Irish People, Inc.*, 684 F.2d 928, 945 (D.C. Cir. 1982).

FARA directs a two-part test for determining when a covered agency relationship exists. First, a person must "act[] as an agent, representative, employee, or servant," or "in any other capacity at the order, request, or under the direction or control[]" of a foreign principal or the intermediary of a foreign principal.[3]  22 U.S.C. § 611(c)(1).  Second, the person must undertake,

---

[3] A "foreign principal" is defined under FARA to include "a government of a foreign country and a foreign political party"; "a person outside of the United States," other than a United States citizen

directly or through another, certain types of activities within the United States on the foreign principal's behalf, including: engaging in "political activities";[4] acting as a "public-relations counsel," "publicity agent," "information-service employee," or "political consultant";[5] engaging in financial dealings for or in the interests of the foreign principal; or representing the foreign principal's interests before the federal government. *Id*. § 611(c)(1)(i)-(iv). A foreign agent is also one who engages in such conduct and "agrees, consents, assumes or purports to act as, or who is or holds himself out to be, whether or not pursuant to contractional relationship, an agent of a foreign principal." *Id*. § 611(c)(2).

Persons who qualify as agents of one or more foreign principals under FARA are required to submit a registration statement with DOJ within ten days of the start of the relationship. *Id*. § 612(a). FARA prescribes that certain information be included in the registration statement, *id*. § 612(a)(1)-(11), and that supplementary information be filed at six-month intervals, *id*. § 612(b). FARA exempts various individuals, such as diplomatic or consular officers; officials of foreign governments; persons engaged in private and nonpolitical activities; and legal representatives,

---

domiciled in the United States or an entity incorporated and having its principal place of business in the United States; and an entity incorporated abroad or "having its principal place of business in a foreign country." 22 U.S.C. § 611(b).

[4] FARA defines "political activities" to mean activities that the agent either believes will, or actually intends to, "in any way" influence U.S. government officials or a section of the U.S. public regarding U.S. domestic or foreign policies or the political or public interests, policies, or relations of a foreign government or foreign political party. *Id*. § 611(o).

[5] A "public-relations counsel," is defined under the Act as a person "who engages directly or indirectly in informing, advising, or in any way representing a principal in any public relations matter pertaining to political or public interests, policies, or relations of such principal." *Id*. § 611(g). A "publicity agent" is one who "engages directly or indirectly in the publication or dissemination of . . . information" through advertising or other media. *Id*. § 611(h). An "information-service employee" is one who "is engaged in furnishing, disseminating, or publishing accounts, descriptions, information, or data" related to certain types of foreign principals. *Id*. § 611(i). A "political consultant" is one who "engages in informing or advising any other person with reference to the domestic or foreign policies of the United States or the political or public interest, policies, or relations of a foreign country or of a foreign political party." *Id*. § 611(p).

among others, from the Act's registration requirements.  *Id*. § 613(a)-(h); *see also* 28 C.F.R. §§ 5.300-307.  "The burden of establishing the availability of an exemption from registration under the Act shall rest upon the person for whose benefit the exemption is claimed." 28 C.F.R. § 5.300. In addition, FARA grants the Attorney General the authority to limit (rather than fully exempt) by regulation the disclosure obligations of registrants' officers and employees where the Attorney General, with "due regard for the national security and public interest," determines that the disclosure of certain statutorily required information is "not necessary to carry out the purposes" of the Act.  22 U.S.C. § 612(f); *see* 28 C.F.R. § 5.202 (detailing those who may file a more limited "short form registration statement").

The administration and enforcement of FARA have been delegated to the Assistant Attorney General for National Security, subject to the supervision and direction of the Attorney General.  28 C.F.R. §§ 0.72(d)(2), 5.1.  FARA violations can result in criminal or civil penalties. Persons who willfully violate the registration requirements or any other provision of the Act are subject to criminal prosecution.  22 U.S.C. § 618(a).  As for injunctive relief, "[w]henever in the judgment of the Attorney General," an individual has violated FARA or its regulations, "the Attorney General may make application" to a district court for injunctive relief, including "an order requiring compliance with any appropriate provision" of the Act or its accompanying regulations.  *Id*. § 618(f).

## II.    AFLF'S ALLEGATIONS

AFLF's Complaint alleges that FARA requires AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register as foreign agents due to their alleged relationships with certain foreign principals, specifically Hamas, the Palestinian Authority, the Palestine Liberation Organization, Islamic Jihad, Mohammad Raad, Hezbollah, and "and other similar 'Palestinian' organizations or persons[,]"  Compl. ¶¶ 35-36.

Specifically, AFLF alleges that AJP Educational Foundation is the "fiscal sponsor" of AMP, and that AMP is in turn "essentially a new name for the Hamas-funding and public relations enterprise formerly led by front groups called the Islamic Association for Palestine and the Holy Land Foundation." *Id.* ¶¶ 38, 40. It alleges that AMP "operates at the request or under the direction of . . . Hamas leadership[,]" "has continued the Islamic Association for Palestine's objective of being a Hamas public relations counsel," and "is also a Hamas-funding enterprise[.]" *Id.* ¶ 41.

AFLF alleges that NSJP is an association under the "organizational management and control" of AMP. *Id.* ¶ 42. It alleges that NSJP identifies itself with Hamas, has "disseminated instructions from Hamas," has "hosted speakers" that are "Specially Designated Global Terrorists" or are affiliated with terrorists, and has "provided direct aid to the same." *Id.* ¶ 43. It alleges that NSJP released a "toolkit" via the internet to college campuses, and that this action constituted "political and public relations advocacy for Hamas." *Id.* ¶ 46.

AFLF alleges that Abuirshaid is "the Executive Director and a board member of AMP[,]" *id.* ¶ 48, and that he "disseminates propaganda and engages in political activity for the benefit of Hamas[,]" *id.* ¶ 49.

AFLF alleges that Bazian is "AMP's Founder and Chairman[,]" and has "knowingly raised money for a Hamas front group[.]" *Id.* ¶¶ 52, 54.

AFLF alleges that WESPAC "reportedly acts as a fiscal sponsor for pro-Hamas and Muslim Brotherhood agents and instrumentalities" including NSJP, among others. *Id.* ¶ 57.

AFLF takes the legal position that this conduct required AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register as foreign agents under the Act and that DOJ "had actual knowledge" that these groups and individuals "have been statutorily defined foreign agents of the terror group

Hamas and other 'Palestinian' principals" and so "were legally obligated to register as such." *Id.*
¶ 4.

AFLF alleges that it filed a purported "complaint" with DOJ on August 16, 2024, in which
it claimed that AMP, NSJP, Abuirshaid, Bazian, and WESPAC "were required to register as []
foreign agent[s]," but that the "Department has neither adjudicated this complaint nor required
AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register[.]" *Id*. ¶ 63. AFLF alleges that this
constitutes "unlawfully withholding and unreasonably delaying nondiscretionary agency action,"
*id*., in violation of the APA, 5 U.S.C. § 706(1), *id.* ¶ 67. AFLF also alleges that DOJ's supposed
refusal to require AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register as foreign agents is
arbitrary and capricious under the APA, 5 U.S.C. § 706(2)(A). *Id.*

AFLF filed its Complaint on November 1, 2024. ECF Nos. 1, 2. It seeks an order
compelling "the defendants to require AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register
as foreign agents in compliance with [the Act]," and hold "unlawful the defendants' refusal to
require AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register as [] foreign agents[s] under
[the Act]." Compl. at 19, Prayer for Relief.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction," and it is therefore "presumed that a cause
lies outside this limited jurisdiction," unless a party demonstrates that jurisdiction exists.
*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A "plaintiff bears the
burden of proving by a preponderance of the evidence that the Court has subject matter
jurisdiction." *Budik v. Ashley*, 36 F. Supp. 3d 132, 138 (D.D.C. 2014) (cleaned up), *aff'd*, No. 14-
5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014). "[W]hen a plaintiff lacks standing, . . .
dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is the proper course." *XP*

*Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 56 (D.D.C. 2015). "[T]he court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Cap. Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011).

A court may also dismiss all or part of a complaint where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), it must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Plaintiffs must be "grant[ed] . . . the benefit of all inferences that can be derived from the facts alleged," but "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I.    AFLF LACKS STANDING

To begin, the Court lacks jurisdiction over this matter because AFLF has not established that it has informational standing. To demonstrate standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). AFLF bears the burden of satisfying each of these elements, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), but fails to satisfy any of them.

### A.    AFLF Lacks Standing to See that FARA Violations Are Enforced

As discussed in more detail below, *see infra* Part II.A, AFLF's suit is a thinly guised request

that this Court order DOJ to bring an enforcement action for alleged FARA violations. But a member of the general public such as AFLF "lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *United States v. Texas*, 599 U.S. 670, 674 (2023) (quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997) ("[S]eeing that the laws are enforced[]" is not "legally cognizable within the framework of Article III"). *See also Citizens for Resp. & Ethics in Wash. v. U.S. Off. of Special Couns.* ("*CREW*"), 480 F. Supp. 3d 118, 133 (D.D.C. 2020) (holding that a nonprofit organization lacked standing where it sought "to compel a federal court to mandate the prosecution of a third party"); and 480 F. Supp. 3d at 133 (holding that the organization "has no greater stake in the disciplinary proceeding to which [an individual] ultimately is, or is not, subject than any other member of the public").

Affording AFLF standing here would "entail [the] expansive judicial direction of [DOJ's enforcement] policies." *Texas*, 599 U.S. at 681. The Supreme Court in *Texas* "decline[d] to start the Federal Judiciary down that uncharted path," *id.*, in a case involving a challenge by several states to the Executive Branch's immigration enforcement policies. *Id*. at 673-74. There, the Supreme Court addressed "only the narrow Article III standing question of whether the Federal Judiciary may in effect order the Executive Branch to take enforcement actions against violators of federal law[,]" and concluded, after a review of "this Court's Article III precedents and the historical practice, the answer is no." *Id*. at 684-85. Here, the answer must be the same. AFLF is inviting the Court to cross over a clear line delineating the separation between federal judicial and executive authority. *Id*. at 678 ("Article II of the Constitution assigns the 'executive Power' to the President and provides that the President 'shall take Care that the Laws be faithfully executed.'"

(quoting U.S. Const., art. II, § 1, cl. 1; § 3)).  The Court should resist that invitation and dismiss this case for lack of jurisdiction on that basis alone.

### B.  AFLF Has Failed to Allege a Cognizable Injury

AFLF alleges that its injury comes in the form of DOJ's alleged deprivation of AFLF's access to information for which it has a statutory right, namely the foreign agent registration information that AFLF claims should be disclosed.[6]  Compl. ¶ 64.  The D.C. Circuit has held that a plaintiff meets the pleading standard for informational injury where it alleges that: "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure."  *Friends of Animals*, 828 F.3d at 992.  "[T]he existence and scope of an injury for informational standing purposes is defined by Congress[.]"  *Id.* at 992.  "[T]he applicable disclosure statute delimits the informational injury."  *Free Speech for People v. Fed. Election Comm'n*, 442 F. Supp. 3d 335, 342 (D.D.C. 2020).

Here, AFLF asserts that FARA grants it a "statutory right" to information that a third party to this lawsuit is allegedly required to disclose.  Compl. ¶¶ 9, 64.  But AFLF identifies no statutory language in FARA that entitles a private entity to foreign agent registration information as a matter of right before such information has been filed with DOJ.  FARA certainly requires the public disclosure of registration materials that a third party has "*filed* with the Attorney General."  *See* 22 U.S.C. § 614(c) (emphasis added) (requiring that such materials be made available for public inspection); *id.* § 616(d)(1)(A) (referencing "registration statements and updates" that are "*filed*

---

[6] AFLF's only alleged injury is an informational one.  Compl. ¶ 9 (arguing that "defendants' refusal to require AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register as foreign agents denies [AFLF] information").  "Where an organization's only asserted injury is an informational one, [the courts] have not engaged in a separate analysis" of organizational standing.  *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 381 (D.C. Cir. 2017) (Williams, J., concurring) (citing *Friends of Animals*, 828 F.3d at 992).

under this subchapter") (emphasis added).  Indeed, FARA requires the Attorney General to maintain and make available to the public an electronic database of such "filed" information.  *Id*. § 616(d)(1) & (2).  But FARA does not require DOJ to make public information that has not been filed, which is the information AFLF seeks here.  AFLF does not identify a single provision under FARA that on its face requires the disclosure of such information.  *See Friends of Animals*, 828 F.3d at 992 ("[Plaintiff's] contention that it has standing fails at the first part of the inquiry, the *sine qua non* of informational injury:  It is seeking to enforce a statutory deadline provision that by its terms does not require the public disclosure of information.").  The absence of such statutory language is fatal to AFLF's standing in this case.

*Friends of Animals* is instructive.  In that case, the Endangered Species Act ("ESA") provided interested persons with the right to petition the Secretary of the Interior to add or remove a species from the endangered or threatened species list.  Such a petition would then trigger two mandatory statutory deadlines: first, within 90 days, the Secretary is required to make a finding regarding whether further action may be warranted; second, if the Secretary determines action is warranted, she is required to make one of three findings within 12 months and publish information related to those findings in the Federal Register.  *Id*. at 990.  After the Secretary failed to make findings within 12 months on certain petitions, the plaintiff organization sought an injunction ordering the Secretary to make findings within 60 days.

The D.C. Circuit concluded that the plaintiff organization lacked informational standing because the ESA imposed no public disclosure requirement on the Secretary *before* the Secretary issued her 12-month findings.  *Id*. at 993.  The plaintiff argued that by missing the 12-month deadline, the Secretary violated its right to timely information.  But the D.C. Circuit distinguished between the ESA's deadline requirements and its disclosure requirements.  The former "was meant

to spur a then-laggard agency to accelerate the pace of the listing process"; "[i]t was not meant . . . to speed up the pace at which the Secretary disclosed information to the public." *Id.* at 993-94. In other words, the plaintiffs could not use ESA's deadline requirement to manufacture a nonexistent disclosure requirement, particularly when the statute established a separate disclosure requirement that had not yet been violated.

FARA does not even have deadline-triggering provisions like those in the ESA. Nothing in FARA requires DOJ to make a determination on any submission by the public regarding purported FARA violations, nor does FARA require DOJ, in response to such a submission, to make and then publicize its conclusions regarding whether a third party must register as a foreign agent.[7] FARA does have a public disclosure requirement, but as with the ESA, it is triggered only after a certain event occurs—here, after a third party has registered as a foreign agent.

*American Society for Prevention of Cruelty to Animals v. Feld Entertainment, Inc.* also supports Defendants' position. 659 F.3d 13 (D.C. Cir. 2011). There, the organizational plaintiff claimed informational standing under a statutory provision in the ESA that prohibited certain conduct but did not give the plaintiff "a right to any information." *Id.* at 23. A separate permitting provision would have required the private defendant to disclose information to the agency if it had sought a permit and would have required the agency to disclose that information, but the defendant had not sought a permit and the agency had not refused to make the information public. *Id.* Accordingly, the organization's suit was premature. *Id.* at 24. So too here: AFLF has no right to demand information that has not been and may never be filed.

---

[7] DOJ does permit entities to seek an Advisory Opinion regarding whether they are required to register as a foreign agent. 28 C.F.R. § 5.2 ("Inquiries concerning application of the Act"). But such requests must be submitted by "a party to the transaction or the party's attorney," *id.* § 5.2(b), not an unrelated third party, so this provision has no application here.

Accordingly, AFLF's suit is a generalized grievance shared by the public. "[I]njuries that are shared *and* generalized . . . are not sufficient to support standing[.]" *Seegars v. Gonzales*, 396 F.3d 1248, 1253 (D.C. Cir. 2005).

### C. Even If AFLF's Injuries Are Cognizable, They Are Not Traceable to DOJ or Redressable by the Court

To succeed in carrying its burden to prove its standing, AFLF "must show that the legal ruling they seek might lead to additional factual information that, on their view of the law, [FARA] requires the [Defendants] to make public." *Campaign Legal Ctr. v. Fed. Election Comm'n*, 31 F.4th 781, 788 (D.C. Cir. 2022). This showing is essential to the traceability and redressability prongs of the standing analysis. To satisfy the traceability prong, a plaintiff must show that the injury is "fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). To satisfy the redressability prong, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (cleaned up).

When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," standing "is not precluded, but it is ordinarily substantially more difficult to establish." *Id*. at 562 (emphasis added, citation omitted). In such circumstances, "causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction." *Id*. The burden is on the plaintiff to allege facts "showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id*. AFLF has not done so.

The legal ruling AFLF seeks is one that would "[c]ompel the defendants to require AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register as foreign agents" or hold unlawful DOJ's alleged "refusal to require [these groups and individuals] to register." Compl., Prayer for Relief.

AFLF's demand for this relief radically oversimplifies the mechanism by which a party might be "required" to register. DOJ does not have self-executing enforcement power under FARA. Instead, there are many procedural steps that are predicate to an ultimate binding registration requirement. At each step, AFLF's traceability and redressability problems compound. For example, even if DOJ demanded by written correspondence that an individual register, that individual might decline to do so. If that were to occur, and if DOJ decided in its discretion to take further action, DOJ would have to pursue a criminal case or seek civil injunctive relief by court order. 22 U.S.C. § 618. But again, such relief would not be automatically given. DOJ would have to prove its case and the individual or entity would be afforded their constitutional right to defend themself. It would be up to the adjudicating court (and the jury in a criminal case) to resolve a dispute over whether registration is required under FARA. Such a hypothetical proceeding is not before this Court. This far-too-attenuated chain of events is predicate to the ultimate information AFLF demands, and AFLF therefore has failed to demonstrate either traceability or redressability.

## II.    AFLF FAILS TO STATE A CLAIM FOR RELIEF

### A. DOJ's Enforcement of FARA Is Unreviewable

Even if the Court had jurisdiction, AFLF's claims would still be subject to dismissal. At bottom, AFLF demands that this Court force DOJ to undertake enforcement actions that are within DOJ's sole discretion. The APA bars judicial review of agency actions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Although the Supreme Court has "read the § 701(a)(2) exception . . . quite narrowly," it has recognized that the exception covers "certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion." *Dep't of Com. v. New York*, 588 U.S. 752, 754 (2019) (citation omitted).

Prime among those matters committed to agency discretion is the decision whether to institute enforcement proceedings. *Id.* In *Heckler v. Chaney*, the Supreme Court held "that an

agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  470 U.S. at 831.  Accordingly, "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)."  *Id*. at 832.  The Supreme Court has stressed that "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," and that such decisions are akin to "the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch."  *Id.* at 831-32.  *See also Texas*, 599 U.S. at 678 ("Under Article II, the Executive Branch possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021)); *United States v. Nixon*, 418 U.S. 683, 693 (1974) (acknowledging that the Executive Branch "has exclusive authority and absolute discretion to decide whether to prosecute a case[]"); *Powell v. Katzenbach*, 359 F.2d 234, 234 (D.C. Cir. 1965) (per curiam), *cert. denied*, 384 U.S. 967 (1966) ("[T]he question of whether and when prosecution is to be instituted is within the discretion of the Attorney General.").

AFLF attempts to circumvent the presumption of nonreviewability by alleging that FARA imposes a "ministerial" or "nondiscretionary duty" on DOJ to compel foreign agents to register under FARA or undertake a "waiver rulemaking."  Compl. ¶¶ 8, 62-63; *see also id*. ¶¶ 4, 26.  But in its Complaint, AFLF fails to identify any statutory provision that imposes such nondiscretionary duties.  AFLF alleges only that FARA "requires registration statements 'to be filed with the Attorney General,'" Compl. ¶ 26 (citing 22 U.S.C. § 611(k)), and that the statute "allows the Attorney General 'by regulation' to provide for an exemption from registration," *id*. (citing 22 U.S.C. § 612(f).  AFLF also vaguely references 22 U.S.C. §§ 612(a), 618(g), and 618(f) in

paragraphs asserting that FARA imposes non-discretionary duties on DOJ.  *Id.* at ¶¶ 33-34.  None of the provisions AFLF identifies does the work AFLF needs of them.

Section 611(k) is irrelevant because it merely defines the term "registration statement" as used throughout the statute.  It does not impose any obligations upon the DOJ.  Further, this is not a case about DOJ's failure to disclose a filed registration statement to the public.  Indeed, AFLF does not allege that any of the named groups or individuals—AMP, NSJP, Abuirshaid, Bazian, and WESPAC—have registered under the Act.

Likewise, 22 U.S.C. § 612(a) imposes no duty on the DOJ.  Instead, that provision imposes obligations on the agents of foreign principals who are required to register under FARA.  The provision defines the "obligation of an agent of a foreign principal to file a registration statement" and specifies the required contents of that statement.  22 U.S.C. § 612(a).  Therefore § 612(a) cannot support AFLF's argument.

Next, AFLF conclusorily alleges that under 22 U.S.C. § 612(f), DOJ has a "nondiscretionary duty . . . to undertake a waiver rulemaking."  Compl. ¶ 8; *see also id.* ¶ 26 (alleging that "rulemaking required for waivers is [not] committed to the Attorney General's discretion").  But nothing in Section 612(f) requires DOJ to make a determination as to whether a specific individual is required to register under FARA or meets some exemption.  Although Section 612(f) vests the Attorney General with authority to issue regulations limiting certain individuals' disclosure obligations under FARA, it does so in inherently discretionary language— "[t]he Attorney General may, by regulation, provide for" exemptions if "the Attorney General . . . determines that such registration, or the furnishing of such information, . . . is not necessary to carry out the purposes of this subchapter," 22 U.S.C. § 612(f).  Further, DOJ has issued such regulations, *see* 28 C.F.R. §§ 5.202; 5.209; 5.210.  These regulations do not require DOJ to

undertake a "waiver rulemaking" for specific individuals.  FARA's regulations make clear that the burden to establish an exemption does not rest with DOJ, but with the person seeking to claim such an exemption.  *Id*. § 5.300.

Further, Section 618(g) is also irrelevant.  It states that "[i]f the Attorney General determines that a registration statement does not comply with the requirements of this subchapter or the regulations issued thereunder, he shall so notify the registrant in writing, specifying in what respects the statement is deficient."  22 U.S.C. § 618(g).  There is no ambiguity in this provision.  AFLF does not allege that any of the named groups or individuals have registered, so this provision is inapplicable.  Under AFLF's interpretation, DOJ would be in breach of its non-discretionary duties if it failed to root out every instance in which an individual has failed to register.  Such an interpretation would be at direct odds with the D.C. Circuit's recognition that under FARA, "[t]he Attorney General may channel his limited resources" in deciding how to enforce the law.  *Irish People*, 684 F.2d at 937.  *See generally Texas*, 599 U.S. at 680 ("[T]he Executive Branch (i) invariably lacks the resources to arrest and prosecute every violator of every law and (ii) must constantly react and adjust to the ever-shifting public-safety and public-welfare needs of the American people.").  The "ordinary or natural meaning" of Section 618(g) is obvious, *FDIC v. Meyer*, 510 U.S. 471, 476 (1994), and there is no reason for the Court to stray from it.

That leaves only Section 618(f), FARA's civil enforcement provision.[8]  Section 618(f) specifies that "[w]henever in the judgment of the Attorney General any person is . . . in violation of the subchapter, the Attorney General may make application to the appropriate United States district court for an order . . . requiring compliance with any appropriate provision of the

---

[8] Nothing in FARA's criminal provisions, 22 U.S.C. § 618(a)(1) & (2), limits DOJ's presumptively unreviewable enforcement discretion.  Indeed, AFLF concedes that "[i]n exercising its prosecutorial discretion, the Department often declines to criminally prosecute cases even when there is solid evidence of a violation of the Act.  Compl. ¶ 32.

subchapter." 22 U.S.C. § 618(f). The provision's use of "whenever in the judgment of the Attorney General," as well as its use of "may," indicates Congress's intent to grant DOJ broad discretion in its enforcement decisions. *See NTCH, Inc. v. Fed. Commc'ns Comm'n*, 841 F.3d 497, 503 (D.C. Cir. 2016) (determining that the Federal Communications Act's use of "may" endowed the Federal Communication Commission with broad discretion to revoke any station license). *See also Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1401 (D.C. Cir. 1995) ("When a statute uses a permissive term such as 'may' rather than a mandatory term such as 'shall,' this choice of language suggests that Congress intends to confer some discretion on the agency[.]").[9] *Cf. Texas*, 599 U.S. at 682 (noting that in light of "the deep-rooted nature of law-enforcement discretion," even where a statute says "the Department 'shall' arrest," there must be a "stronger indication . . . that judicial review of enforcement discretion is appropriate[]" before any particular plaintiff is entitled to enforce a purported statutory arrest mandate in federal court) (citation omitted). The D.C. Circuit has long recognized this discretion, writing in *Irish People, Inc.*, that the Attorney General "has only limited time and money to spend on enforcement, and may, consistent with the Constitution and the statute," decide how best to deploy those resources. 684 F.2d at 938, 945. AFLF cites no case law interpreting a statute stating that an agency "may make application to" a federal court for injunctive relief as *requiring* the agency to pursue injunctive relief. Such a view would be contrary to any ordinary, natural meaning of the law. *Cf. Covington Mills v. Mitchell*, 129 F. Supp. 740, 742 (D.D.C 1955) (refusing to "place a tortured interpretation and attach a distorted meaning to a

---

[9] *See also Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 81 (D.D.C. 2010) (noting that "[u]nder 28 U.S.C. § 535(a), the FBI '*may* investigate' certain crimes involving a Government official or employee; but it is not required to investigate every complaint filed"); *see id.* (citing several decisions in which "courts have held that the FBI's decision to investigate is a discretionary act, not a mandatory one," including *Agunbiade v. United States*, 893 F. Supp. 160, 163 (E.D.N.Y. 1995), *U.S. ex rel. Tyler v. U.S. Att'y*, No. 8:07CV361, 2007 WL 3028420, at *1–2 (D. Neb. Oct. 16, 2007); *Gant v. FBI*, 992 F. Supp. 846, 848 (S.D.W. Va. 1998), *aff'd*, 155 F.3d 558 (4th Cir. 1998); and *Whittle v. Moschella*, 756 F. Supp. 589, 597 (D.D.C. 1991)).

simple English word").  This is consistent with the "mandatory/permissive" interpretive canon, under which permissive words like "may," grant discretion.  *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112 (2012) ("Mandatory words impose a duty; permissive words grant discretion.  The text of this canon is entirely clear, and its content so obvious as to be hardly worth the saying.").

The significant degree of discretion FARA and its regulations afford DOJ can be seen most sharply in contrast to other statutory regimes, particularly those that affirmatively impose duties on agencies to respond to public complaints and to issue public determinations.  For example, under the Endangered Species Act, on receiving a petition to add or remove a species from certain lists, the Secretary of the Interior must make a finding within 90 days regarding whether the petition contained enough information to indicate that action may be warranted.  If the Secretary determines that action may be warranted, she is required to make such a finding within 12 months and publish information related to those findings in the Federal Register.  *See* 16 U.S.C. § 1533(b)(3)(A), (B).  The publication of the Secretary's ultimate determination is "non-discretionary," and her determination that action is not warranted is subject to judicial review under the ESA's citizen-suit provision.  *See Friends of Animals*, 828 F.3d at 991.

To take another example, under the Federal Election Campaign Act ("FECA") any person may file a complaint alleging a violation of the statute.  52 U.S.C. § 30109(a)(1).  If at least four members of the Federal Election Commission ("FEC") find that there is reason to believe a violation has occurred, the FEC "shall make an investigation of [the] alleged violation[.]"  *Id.* § 30109(a)(2).  The FEC is required to notify the alleged violator of such a finding, but not the complainant.  *Free Speech for People*, 442 F. Supp. 3d at 338 (citing 11 C.F.R. § 111.9(a)).  The FEC is required to notify the respondent and the complainant only if it finds no reason to believe

a violation has occurred or otherwise terminates proceedings. *Id*. (citing 11 C.F.R. § 111.9(b)). The complainant has a right to sue the FEC if it fails to act within 120 days of the complaint's filing or if the FEC dismisses the complaint. *Id*. at 339 (citing 52 U.S.C. § 30109(a)(8)(A)).

In stark contrast to these statutory regimes, FARA does not require DOJ to respond to a member of the public's assertions regarding an alleged FARA violation. It imposes no deadlines on DOJ to come to a conclusion regarding the underlying allegations and does not contain a public disclosure provision that requires DOJ to publicly disclose whether it plans to investigate the allegations or, if it has investigated the conduct, whether it has come to any conclusions regarding the conduct. There are no statutory deadlines imposing a limit on the length of any investigation DOJ initiates, and the statute affords no rights to the public to challenge DOJ's failure to act on claimed FARA violations within a certain amount of time or to challenge a conclusion by DOJ that the alleged conduct does not violate FARA.[10]

Instead, and as noted above, FARA's language regarding the enforcement of its provisions is discretionary, which is fatal to AFLF's assertion that DOJ has a "ministerial and non-discretionary duty to ensure that AMP, NSJP, Abuirshaid, Bazian, and WESPAC" register as foreign agents. Compl. ¶ 62. Courts have rejected similar arguments in the past. For example, in *Better Markets, Inc. v. United States Department of Justice*, 83 F. Supp. 3d 250, 256 (D.D.C. 2015)

---

[10] Nor does FARA afford citizens a private right of action. Rather, "FARA specifically provides for enforcement of its provisions and assigns that task to the Department of Justice." *Comm. For a Free Namibia v. S. W. Africa People's Org.*, 554 F. Supp. 722, 725 (D.D.C. 1982). *See also Dvoinik v. Rolff*, No. 8:23-cv-0623-KKM-CPT, 2023 WL 3276398, at *2 (M.D. Fla. May 5, 2023) (holding that plaintiffs lacked standing to allege that defendants had failed to register under FARA); *Bey v. Epstein*, No. 3:21-cv-901, 2021 WL 8155603, at *4 (D. Conn. Aug. 6, 2021) (same); *Meng v. Xinhuanet Co.*, 16 Civ. 6127 (ER), 2017 WL 3175609, at *3 (S.D.N.Y. July 25, 2017) (same). Whether any person has complied with the requirements of FARA "presents the very issue[s] which FARA entrusts to the Attorney General to detect and remedy." *Free Namibia*, 554 F. Supp. at 726. "The decisions to bring such a proceeding and seek this type of relief are distinctly left within the discretion of the Attorney General." *Id*.

(Howell, J.), the plaintiff argued that "it had a right to enforcement of the laws in a particular manner . . . , and that due to the defendants' choice of enforcement action, the plaintiff was deprived of information to which it was entitled[.]"  83 F. Supp. 3d at 256.  The court deemed the plaintiff's claims to be "seriously flawed," noting that "[c]hoosing whether and how to enforce a statute is the quintessential type of action 'committed to an agency's absolute discretion.'"  *Id.* (quoting *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1031 (D.C. Cir. 2007)).  The court noted that DOJ "could have declined to pursue any enforcement action against [a private third party], and such a decision would have been wholly unreviewable."  *Id.* (citing *Heckler*, 470 U.S. at 831).  The same reasoning applies here.

AFLF's Complaint makes clear that, despite couching its argument in the language of non-discretionary duties, it is really asking the Court to review whether and how DOJ enforces FARA. But *Heckler* bars the Court from reviewing DOJ's FARA enforcement decisions—whether they are based on a determination that an individual or entity has not actually violated the law, a reasoned assessment of the likelihood of success of any enforcement action, or prioritization of limited resources.  *See Heckler*, 470 U.S. at 831 (citing these factors and more).  *See also Texas*, 599 U.S. at 680 ("In light of inevitable resource constraints and regularly changing public-safety and public-welfare needs, the Executive Branch must balance many factors when devising arrest and prosecution policies.  That complicated balancing process in turn leaves courts without meaningful standards for assessing those policies.").  Accordingly, AFLF's suit should be dismissed as unreviewable.

### B. AFLF Fails to State a Section 706(1) Claim that DOJ Has Unlawfully Withheld or Unreasonably Delayed Agency Action Because DOJ Is Not Required to Order any Individual to Register under FARA and Is Not Required to Adjudicate Complaints from the Public

Even if DOJ's alleged inaction were reviewable, AFLF's claim should be dismissed

because it has failed to allege that DOJ's alleged inaction constitutes agency action unreasonably withheld or unlawfully delayed.  "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *SUWA*, 542 U.S. at 64.  AFLF merely alleges that DOJ has refused to require AMP, NSJP, Abuirshaid, Bazian, and WESPAC to register as foreign agents and failed to "adjudicate" its August 16, 2024 "complaint."  Compl. ¶ 63.  As discussed above, neither FARA nor its regulations mandate that DOJ take any action against an unregistered agent of a foreign principal.  Nor does FARA or its regulations require DOJ to "adjudicate" a "complaint" filed by a member of the public regarding another individual's or entity's potential violations of FARA.  As a result, AFLF cannot make out a claim that DOJ has unreasonably withheld or unlawfully delayed agency action because the Complaint fails to allege that DOJ has delayed in taking a discrete action that it is required to take.

### C.  If AFLF Asserts a Separate Section 706(A)(2) Claim, It Should Be Dismissed Because AFLF Has Failed to Allege that any Final Agency Action Has Taken Place

It is not clear whether Plaintiff's reference to Section 706(2)(A) reflects a claim separate from its Section 706(1) claim because Plaintiff combines both references in a single claim for relief.  *See* Compl. ¶¶ 61–67.  If Plaintiff's Section 706(2)(A) claim is merely the flipside of its Section 706(1) claim, it "fare[s] no better."  *SUWA*, 542 U.S. at 65.

First, to state any claim under the APA, a plaintiff must allege that the conduct by the agency constitutes "final agency action."  5 U.S.C. § 704.  *See Trudeau*, 456 F.3d at 188-89 (noting that "the absence of final agency action . . . cost [plaintiff] his APA cause of action").  To constitute final agency action, two conditions must be met: (1) "the action must mark the consummation of the agency's decisionmaking process," and (2) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow[.]"  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).  AFLF has not plausibly alleged that DOJ has taken such a final

agency action.  Plaintiff fails to allege any concrete, particularized facts to demonstrate that DOJ has formally decided against bringing a civil or criminal enforcement action under FARA against AMP, NSJP, Abuirshaid, Bazian, or WESPAC.  AFLF does not identify a single public statement by DOJ in which it has announced that it has declined to enforce FARA against these groups or individuals.  Plaintiff instead speculates from DOJ's alleged inaction (speculation in itself), that DOJ has formally made such a decision.  But in the absence of anything beyond its own conclusory statements, AFLF has not alleged that DOJ has engaged in any final agency action regarding the enforcement of FARA against AMP, NSJP, Abuirshaid, Bazian, or WESPAC.

Second, AFLF states no factual basis whatsoever for a separate, cognizable claim under Section 706(2)(A).  *See* Compl. ¶ 67.  AFLF's Complaint does not use the word "arbitrary" or "capricious" at all, much less does it explain how or why DOJ's alleged action or inaction is irrational.  Without more, AFLF has not made factual allegations sufficient to show arbitrary and capricious agency action in order to establish a plausible right to relief under § 706(2)(A).  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 679.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.


Dated: January 6, 2025                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          ALEXANDER K. HAAS
                                          Director
                                          Federal Programs Branch

                                          JOSHUA E. GARDNER

Special Counsel
Federal Programs Branch

/s/ *Allison M. Walter*
ALLISON M. WALTER
D.C. Bar No. 90008637
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 616-8492
Email: allison.m.walter@usdoj.gov

*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 6, 2025, I filed the foregoing with the Clerk of the Court electronically via the Court's ECF system which sent notification of such filing to counsel of record for all parties.

/s/ *Allison M. Walter*
ALLISON M. WALTER
D.C. Bar No. 90008637
Trial Attorney, U. S. Dept. of Justice
Civil Division, Federal Programs Branch
1100 L St., NW
Washington, D.C.
