## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION,<br><br>*Plaintiff,*<br><br>v.<br><br>MERRICK GARLAND, *Attorney General of the United States, in his official capacity*<br><br>and<br><br>DEPARTMENT OF JUSTICE,<br><br>*Defendants.* | Case No.: 1:24-cv-03105-RJL |

## PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANTS' MOTIONS TO DISMISS AND EXCUSE COMPLIANCE WITH LOCAL CIVIL RULE 7(n)

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

STANDARD OF REVIEW ........................................................................................ 2

ARGUMENT ............................................................................................................ 3

    I.    America First Legal Has Standing ................................................................. 3

    II.    The Government's Failure to Act Is Judicially Reviewable ......................... 8

        A.    This Case Exceeds the Bounds of Enforcement Discretion ................... 9

        B.    Congress Did Not Confer Absolute Discretion ..................................... 10

        C.    The Government Has Consented to Administrative Review ............... 17

    III.    The Government's Motion to Excuse Compliance with Local Civil Rule 7(n) Should Be Denied ........................................................................ 18

    IV.    America First Legal Should Be Granted Jurisdictional Discovery ............ 20

CONCLUSION ........................................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967) ................................................................................ 8

*Action All. of Senior Citizens of Greater Philadelphia v. Heckler*,
    789 F.2d 931 (D.C. Cir. 1986) ............................................................... 6

*Ali v. D.C. Gov't*,
    697 F. Supp. 2d 88 (D.D.C. 2010) ......................................................... 3

*Am. Fed'n of State, Cnty., Mun. Emps. Loc. 2401 v. D.C.*,
    796 F. Supp. 2d 136 (D.D.C. 2011) ....................................................... 3

*Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent., Inc.*,
    659 F.3d 13 (D.C. Cir. 2011) .................................................................. 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................ 3

*Att'y Gen. of U.S. v. Irish People, Inc.*,
    684 F.2d 928 (D.C. Cir. 1982) .............................................. 11, 16, 17

*Bennett v. Spear*,
    520 U.S. 154 (1997) ................................................................................ 9

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023) ......................................................................... 13

*Byrd v. EPA*,
    174 F.3d 239 (D.C. Cir. 1999) .............................................................. 7

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
    31 F.4th 781 (D.C. Cir. 2022) .............................................................. 4

*Christensen v. Harris County*,
    529 U.S. 576 (2000) ............................................................................. 13

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) ................................................................................ 8

*Clarke v. Secs. Indus. Assn.*,
    479 U.S. 388 (1987) ........................................................................... 8, 9

*Democracy Forward Found. v. Pompeo,*
  474 F. Supp. 3d 138 (D.D.C. 2020) ............................................................ 3

*DHS v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020) ............................................................................. 9

*Diamond Chem. Co., Inc. v. Atofina Chems., Inc.,*
  268 F. Supp. 2d 1 (D.D.C. 2003) ............................................................ 20

*E. Band of Cherokee Indians v. United States Dep't of the Interior,*
  534 F. Supp. 3d 86 (D.D.C 2021) ............................................................ 3

*Eagle Pharms., Inc. v. Azar,*
  952 F.3d 323 (D.C. Cir. 2020) .............................................................. 15

*Ethyl Corp. v. EPA,*
  306 F.3d 1144 (D.C. Cir. 2002) .............................................................. 6

*Fed. Election Comm'n v. Akins,*
  524 U.S. 11 (1998) .......................................................................... passim

*Fed. Exp. Corp. v. Holowecki,*
  552 U.S. 389 (2008) ............................................................................. 13

*Friends of Animals v. Jewell,*
  828 F.3d 989 (D.C. Cir. 2016) ........................................................... 4, 6

*Galvin v. Del Toro,*
  586 F. Supp. 3d 1 (D.D.C. 2022) ........................................................... 13

*GTE New Media Servs., Inc. v. BellSouth Corp.,*
  199 F.3d 1343 (D.C. Cir. 2000) ............................................................ 20

*Gutierrez de Martinez v. Lamagno,*
  515 U.S. 417 (1995) ............................................................................. 13

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) .............................................................................. 8

*Heckler v. Cheney,*
  470 U.S. 821 (1985) ........................................................................ passim

*Ignatiev v. United States,*
  238 F.3d 464 (D.C. Cir. 2001) ............................................................. 21

*Jerome Stevens Pharms., Inc. v. Food & Drug Admin.,*
  402 F.3d 1249 (D.C. Cir. 2005) .............................................................. 2

*Jud. Watch, Inc. v. Dep't of Com.,*
   583 F.3d 871 (D.C. Cir. 2009) ................................................................. 7

*LaRoque v. Holder,*
   650 F.3d 777 (D.C. Cir. 2011) ................................................................. 4

*Lexecon v. Milberg Weiss Bershad Hynes & Lerach,*
   523 U.S. 26 (1998) ................................................................................ 13

*Loughlin v. United States,*
   393 F.3d 155 (D.C. Cir. 2004) ............................................................... 21

*Marino v. Nat'l Oceanic & Atmospheric Admin.,*
   451 F. Supp. 3d 55 (D.D.C. 2020), *aff'd*, 33 F.4th 593 (D.C. Cir. 2022) .................. 2

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
   567 U.S. 209 (2012) ............................................................................... 8

*Meese v. Keene,*
   481 U.S. 465 (1987) ............................................................................... 4

*Meina Xie v. Kerry,*
   780 F.3d 405 (D.C. Cir. 2015) ............................................................... 12

*Mova Pharm. Corp. v. Shalala,*
   140 F.3d 1060 (D.C. Cir. 1998) ............................................................. 15

*Nat'l L. Ctr. On Homelessness & Poverty v. U.S. Dep't of Veterans Affs.,*
   842 F. Supp. 2d 127 (D.D.C. 2012) ......................................................... 3

*Norton v. S. Utah Wilderness All.,*
   542 U.S. 55 (2004) ............................................................................ 9, 10

*People for the Ethical Treatment of Animals v. Dep't of Agric. ("PETA"),*
   797 F.3d 1087 (D.C. Cir. 2015) ........................................................ 3, 6, 7

*Phoenix Consulting Inc. v. Republic of Angola,*
   216 F.3d 36 (D.C. Cir. 2000) ................................................................ 21

*Prakash v. Am. Univ.,*
   727 F.2d 1174 (D.C. Cir. 1984) ............................................................. 21

*Pub. Citizen v. Department of Justice,*
   491 U.S. 440 (1989) .................................................................... 4, 6, 7, 15

*Sierra Club v. Jackson,*
   648 F.3d 848 (D.C. Cir. 2011) ............................................................... 13

iv

*U.S. Army Corps of Engrs. v. Hawkes Co.,*
    578 U.S. 590 (2016) ................................................................... 9

*United States v. Nixon,*
    418 U.S. 683 (1974) ................................................................... 11

*United States v. Rodgers,*
    461 U.S. 677 (1983) ................................................................... 12

*United States v. Texas,*
    599 U.S. 670 (2023) ........................................................... passim

*VoteVets Action Fund v. Dep't of Veterans Affs.,*
    992 F.3d 1097 (D.C. Cir. 2021) ................................................. 6

*Wesberry v. United States,*
    205 F. Supp. 3d 120 (D.D.C. 2016) ......................................... 21

*Yates v. United States,*
    574 U.S. 528 (2015) ................................................................... 14

**STATUTES**

22 U.S.C. § 611 .................................................................................. 1

22 U.S.C. § 612 .................................................................... 1, 11, 15

22 U.S.C. § 612(a) ....................................................................... 8, 11

22 U.S.C. § 612(f) ............................................................................ 17

22 U.S.C. § 613 ................................................................................ 16

22 U.S.C. § 614 .................................................................... 8, 11, 15

22 U.S.C. § 616 .................................................................... 1, 11, 15

22 U.S.C. § 618 ................................................................................ 11

22 U.S.C. § 618(a) ..................................................................... 12, 15

22 U.S.C. § 618(f) ......................................................... 1, 12, 14, 16

22 U.S.C. § 618(g) ...................................................... 12, 13, 14, 16

22 U.S.C. § 620 ................................................................................ 11

22 U.S.C. § 621 ................................................................................ 11

5 U.S.C. § 701(a) ............................................................................... 9

5 U.S.C. § 704 ................................................................................... 9

5 U.S.C. § 706(1) ...................................................................... passim

5 U.S.C. § 706(2) ............................................................................. 11

Foreign Agents Registration Act of 1938, as amended,
    Pub. L. No. 77-532, 56 Stat. 248 (1942) ..................................... 4

Paperwork Reduction Act,
    44 U.S.C. § 3501 *et seq.* ........................................................... 17

## OTHER AUTHORITIES

3 SUTHERLAND STATUTORY CONSTRUCTION § 57:10 (8th ed.) ...................... 13

A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL
    TEXTS (2012) ............................................................... 13, 14, 15

*America First Legal Demands Investigation in the DOJ's Failure to
    Prosecute Pro-Hamas Violence* (Jan. 5, 2024), https://perma.cc/HV8T-
    BLY5 ......................................................................................... 21

DANIEL Z. EPSTEIN, THE INVESTIGATIVE STATE: REGULATORY OVERSIGHT
    IN THE UNITED STATES (2023) ...................................................... 5

DEP'T JUST., *Exhibit A to Registration Statement Pursuant to the
    Foreign Agents Registration Act of 1938, as Amended*, OMB No.
    1124-0006 (2023), https://perma.cc/9YVG-9RLV ........................ 17

DEP'T JUST., *FARA Enforcement* (updated Mar. 15, 2023),
    https://perma.cc/Q66Z-MCQH .............................................. 11, 17

DEP'T JUST., *Short Form Registration Statement Pursuant to the
    Foreign Agents Registration Act of 1938, as Amended*, OMB No.
    1124-0005 (2020), https://perma.cc/PL4X-H792 ......................... 17

Mathew D. McCubbins & Thomas Schwartz, *Congressional Oversight
    Overlooked: Police Patrols Versus Fire Alarms*,
    28 AM. J. POL. SCI. 168 (1984) ..................................................... 5

McNollGast, *Administrative Procedures as Instrument of Political
    Control*,
    3 J. L. ECON. & ORG. 254 (1987) ................................................. 5

U.S. DEPT. OF JUSTICE, *Protecting the United States from Covert Foreign Influence*, https://perma.cc/5DSW-3JLA ................................................... 16

WHITNEY K. NOVAK, CONG. RSCH. SERV., IFI1439, FOREIGN AGENTS REGISTRATION ACT (FARA): A LEGAL OVERVIEW (2023) ........................................... 5

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 2

Fed. R. Civ. P. 12(b)(6) ................................................................................. 2

Local Civil Rule 7(n) ..................................................................................... 18

**REGULATIONS**

28 C.F.R. § 5.2 .............................................................................................. 18

## INTRODUCTION

The government knows that certain groups and individuals — AJP Foundation, Inc. a/k/a/ American Muslims for Palestine ("AMP"), National Students for Justice in Palestine ("NSJP"), Osama Abuirshaid, Hatem Bazian, and WESPAC Foundation, Inc. ("WESPAC") (collectively, the "Hamas supporters") — are obligated to register under the Foreign Agents Registration Act. 22 U.S.C. §§ 611–12; Compl. ¶¶ 1, 4, 7, 20–27, 35–60, 63, ECF No. 2. The government also knows that America First Legal Foundation has a statutory right to review and obtain their registration statements. 22 U.S.C. § 616; Compl. ¶¶ 25, 64–66. Nevertheless, disregarding statutory text and controlling authorities, the government challenges America First Legal's standing and claims absolute discretion to ignore their conduct.

This is not a generalized non-enforcement case. *Compare United States v. Texas,* 599 U.S. 670, 681–82 (2023). America First Legal has suffered concrete informational harm from the government's specific choice to under-enforce as to the Hamas supporters, and the Administrative Procedure Act explicitly authorizes the Judiciary to enter appropriate orders that will redress this harm. 22 U.S.C. § 618(f); 5 U.S.C. § 706(1); *Texas,* 599 U.S. at 682. Furthermore, the facts of *this case* arguably establish the "extreme case of non-enforcement" that supports Article III standing. *Id.* at 682–83*; see also Heckler v. Cheney,* 470 U.S. 821, 833 n.4 (1985). The government's claim that America First Legal asks the Court to order the Department of Justice to "root out every instance in which an individual has failed to register," Ds.' Mem. Supp. Mot. Dismiss Pl's Compl. ("Ds.' MTD") 18, ECF No. 6, is inaccurate.

1

Rather, on the facts of *this case*, America First Legal asks the Court to order the government to comply with the Act and seek the Hamas supporters' registration. Compl., Prayer for Relief ¶¶ A–B.[1]

America First Legal has standing in this case, and the government has a non-discretionary legal duty to seek the Hamas supporters' registration under the Foreign Agents Registration Act. Therefore, the government's motions should be denied. Alternatively, America First Legal should be granted leave to conduct limited, expedited jurisdictional discovery to determine whether the government's conduct in this case is justiciable. *See Texas,* 599 U.S. at 683.

## STANDARD OF REVIEW

When ruling on the government's Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court must treat America First Legal's factual allegations as true and afford it the benefit of all inferences that can be derived from the facts alleged. *Marino v. Nat'l Oceanic & Atmospheric Admin.*, 451 F. Supp. 3d 55, 59 (D.D.C. 2020), *aff'd*, 33 F.4th 593 (D.C. Cir. 2022). The Court may also consider materials outside the pleadings. *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

When ruling on the government's Rule 12(b)(6) motion for failure to state a claim, the Court must allow the claim "to continue past this stage of proceedings" if

---

[1] *Accord Texas*, 599 U.S. at 683. The Court pointed out that detention policies of "noncitizens who have already been arrested might raise a different standing question than arrest or prosecution policies." The government already knows that the Hamas supporters have a duty to register as foreign agents. Therefore, this matter is more analogous to a "detention" case than an "arrest or prosecution policy" case.

2

the factual allegations "raise a right to relief above the speculative level." *Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 92 (D.D.C. 2010); *Am. Fed'n of State, Cnty., Mun. Emps. Loc. 2401 v. D.C.*, 796 F. Supp. 2d 136, 139, 142 (D.D.C. 2011). A complaint must only contain sufficient facts that, accepted as true, would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Am. Fed'n of State, Cnty., Mun. Emps. Loc. 2401*, 796 F. Supp. 2d at 139 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

Because this is an Administrative Procedure Act case, the Court should review the entire case as a matter of law. *E. Band of Cherokee Indians v. United States Dep't of the Interior*, 534 F. Supp. 3d 86, 97 (D.D.C 2021). Ordinarily, the court reviews the administrative record; however, courts may turn to extra-record evidence where, as here, an agency is sued under section 706(1) for failure to act "because there is no final agency action to demarcate the limits of the record." *Democracy Forward Found. v. Pompeo*, 474 F. Supp. 3d 138, 148 (D.D.C. 2020) (quoting *Nat'l L. Ctr. On Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012)).

## ARGUMENT

### I.    America First Legal Has Standing

America First Legal, "like an individual plaintiff," has standing if it "shows actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *People for the Ethical Treatment of Animals v. Dep't of Agric. ("PETA")*, 797 F.3d 1087, 1093 (D.C. Cir. 2015)

(cleaned up). "A plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that: (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

America First Legal must show the legal ruling it seeks — that the government must seek the Hamas supporters' registration and related filings and then publicly disclose them — might lead to additional factual information that Congress requires the government to make public. *See Campaign Legal Ctr. v. Fed. Election Comm'n*, 31 F.4th 781, 788 (D.C. Cir. 2022); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998); *Pub. Citizen v. Department of Justice,* 491 U.S. 440, 449 (1989). "[I]n assessing plaintiffs' standing, we must assume they will prevail on the merits of their [legal] claims." *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

The Foreign Agents Registration Act was enacted so that "the people of the United States may be informed of the identity of [foreign agents] and may appraise their statements and actions in the light of their associations and activities." *Meese v. Keene*, 481 U.S. 465, 469 (1987) (quoting Foreign Agents Registration Act of 1938, as amended, Pub. L. No. 77-532, 56 Stat. 248–49 (1942)). Congress enacted the Foreign Agent Registration Act "to reduce the influence of foreign propaganda circulating in the United States," and it "[a]nticipat[ed]] that greater transparency could help achieve these ends." WHITNEY K. NOVAK, CONG. RSCH. SERV., IFI1439,

FOREIGN AGENTS REGISTRATION ACT (FARA): A LEGAL OVERVIEW 1 (2023). Similarly, one of the reasons Congress adopted the Administrative Procedure Act was so that Congress could rely on outside organizations like America First Legal to obtain information from government agencies as part of Congress's constitutional oversight function. Mathew D. McCubbins & Thomas Schwartz, *Congressional Oversight Overlooked: Police Patrols Versus Fire Alarms*, 28 AM. J. POL. SCI. 168–169 (1984) (describing Congress as using administrative procedures to delegate oversight responsibilities to regulated parties); McNollGast, *Administrative Procedures as Instrument of Political Control*, 3 J. L. ECON. & ORG. 254 (1987) (same); DANIEL Z. EPSTEIN, THE INVESTIGATIVE STATE: REGULATORY OVERSIGHT IN THE UNITED STATES (2023) (providing empirical evidence that Congress's capacity to conduct oversight depends upon regulated parties reporting violations of administrative procedures). Obviously, if agents of foreign principals fail or refuse to register, and the government, knowing that registration and disclosure are required, stands idly by, then there is nothing to disclose, and the public is deprived of the information Congress intended them to have.

The Hamas supporters' Foreign Agents Registration Act information is directly related both to America First Legal's public education mission in support of policies aimed at protecting our nation's sovereignty, borders, economic security, and Constitution, and to its core public education mission of disclosing relevant information regarding the operation of the government to support the rule of law. Compl. ¶¶ 5–6, 10, 15. As the courts have repeatedly said when upholding similar

claims of informational injury, "there 'is no reason to doubt their claim that the information would help [the plaintiff].'" *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002) (quoting *Akins*, 524 U.S. at 21). The government's failure to act as required by law "den[ies] [America First Legal] access to information and avenues of redress they wish to use in their routine information-dispensing [and advocacy] activities." *Action All. of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 937–38 (D.C. Cir. 1986). Accordingly, the government has inflicted "the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals*, 828 F.3d at 992.

A long line of analogous precedents under similar disclosure statutes supports America First Legal's standing. *See Pub. Citizen*, 491 U.S. at 449 ("[R]efusal to permit appellants to scrutinize [a] Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue."); *Akins*, 524 U.S. at 21 (A plaintiff "suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."); *VoteVets Action Fund v. Dep't of Veterans Affs.*, 992 F.3d 1097, 1103 (D.C. Cir. 2021) ("VoteVets claims an informational injury under FACA by pleading that the Council and VA failed to comply with the statute's disclosure and transparency requirements."); *PETA*, 797 F.3d at 1095 ("Because PETA's alleged injuries — denial of access to bird-related AWA information . . . — are concrete and specific to the work in which they are engaged, we find that PETA has alleged a cognizable injury sufficient to support standing.") (cleaned up); *Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent.*,

*Inc.*, 659 F.3d 13, 23 (D.C. Cir. 2011) ("For purposes of informational standing, a plaintiff is injured-in-fact because he did not get what the statute entitled him to receive.") (cleaned up); *Jud. Watch, Inc. v. Dep't of Com.*, 583 F.3d 871, 873 (D.C. Cir. 2009) ("In the context of a FACA claim, an agency's refusal to disclose information that the act requires be revealed constitutes a sufficient injury."); *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999) ("[A] refusal to provide information to which one is entitled under FACA constitutes a cognizable injury sufficient to establish Article III standing.").

The government claims that America First Legal lacks informational standing because the Hamas supporters have chosen not to comply with the Act, rendering America First Legal's suit essentially a generalized grievance shared by the public, and its harm neither traceable nor redressable. Ds.' MTD 11–14 (citations omitted). But "that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under does not lessen [America First Legal's] asserted injury, any more than the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue." *Pub. Citizen*, 491 U.S. at 449–50; *see Akins*, 524 U.S. at 24–25 (same); *see also PETA*, 797 F.3d at 1093 ("The United States Supreme Court has made plain that a 'concrete and demonstrable injury to an organization's activities — with the consequent drain on the organization's resources — constitutes far more than simply a setback to the organization's abstract social interests' and thus suffices for standing.") (cleaned up)

(quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Furthermore, America First Legal's informational injury easily satisfies the zone of interest requirement. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224–25 (2012) (quoting *Clarke v. Secs. Indus. Assn.*, 479 U.S. 388, 399 (1987).

Nor does the America First Legal's standing depend on any possibility that "the [government] might reach the same result exercising its discretionary powers lawfully" (though no such possibility exists here, as explained in Part II.B, *infra*). *Akins*, 524 U.S. at 25. Agencies often have discretion about taking a particular action, yet those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon improper legal grounds. *See, e.g.*, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). Thus, America First Legal's "injury in fact," is "fairly traceable" to the government's decision not to seek Foreign Agents Registration Act compliance from the Hamas supporters. *Accord Akins,* 524 U.S. at 25.

## II.    The Government's Failure to Act Is Judicially Reviewable

The Hamas supporters are obligated to register as agents of foreign principals and to properly label and file all political propaganda or "informational materials" they have transmitted on their behalf. 22 U.S.C. §§ 612(a), 614. The government has chosen not to seek their compliance and harmed America First Legal. The government's decision not to seek their registration and, by necessary implication,

withhold it from public review, is reviewable agency action. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004); 5 U.S.C. § 704. The government's decision not to secure the Hamas supporters' registration helps them but harms the public generally and America First Legal specifically. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *U.S. Army Corps of Engrs. v. Hawkes Co.*, 578 U.S. 590, 597 (2016).

The Administrative Procedure Act establishes a basic presumption of judicial review for one suffering legal wrong because of agency action. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (cleaned up). This presumption controls here because the Foreign Agents Registration Act does not preclude review, nor does it commit to the government's discretion its duty to seek the Hamas supporters' registration and then disclose it to America First Legal and the public. On the facts of this case, America First Legal is entitled to judicial review, and the Court should deny the government's motions.

### A.    *This Case Exceeds the Bounds of Enforcement Discretion*

The government argues jurisdiction is lacking because this case involves the Department of Justice's decision not to ask the Hamas supporters to comply with the Foreign Agents Registration Act, although it had actual knowledge that they were violating statutory requirements. Compl. ¶¶ 4, 7, 20–27, 35–60, 63; Ds.' MTD 15.

In *Heckler,* the Supreme Court noted that agency enforcement decisions "ha[ve] traditionally been 'committed to agency discretion,'" and concluded that Congress did not intend to alter that tradition in enacting the Administrative Procedure Act. 470 U.S. at 832; 5 U.S.C. § 701(a) (courts will not review agency

actions where "statutes preclude judicial review," or where the "agency action is committed to agency discretion by law"). But as the Court recently affirmed, "we do not suggest that federal courts may never entertain cases involving the Executive Branch's alleged failure to make more arrests or bring more prosecutions," much less the action requested by America First Legal here. *Texas*, 599 U.S. at 681; *see also Akins*, 524 U.S. at 26. For example, courts have jurisdiction over suits in cases of extreme non-enforcement that arguably "exceed the bounds of enforcement discretion." *Texas,* 599 U.S. at 683. Also, courts have jurisdiction over challenges involving non-prosecution and the conferral of legal benefits or legal status. *Id.* And, courts have jurisdiction in cases where a statute "explicitly indicates" suits are authorized by plaintiffs harmed by under-enforcement. *Akins,* 524 U.S. at 26; *Texas,* 599 U.S. at 682.

### B.    *Congress Did Not Confer Absolute Discretion*

The Administrative Procedure Act authorizes the Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *Norton*, 542 U.S. at 64. While courts generally do not review the exercise of enforcement discretion committed to agencies, it is well established that a section 706(1) claim proceeds if the "plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64.

The Department of Justice asked the public "[i]f you believe an individual or entity is violating [the Foreign Agents Registration Act] or has an obligation to register, please contact the FARA unit." DEP'T JUST., *FARA Enforcement* (updated

Mar. 15, 2023), https://perma.cc/Q66Z-MCQH. America First Legal did this on August 16, 2024. However, the government has chosen not to act. There are two possible explanations for this. The first is that the government received America First Legal's complaint, reviewed it, and determined that the Hamas supporters were not required to register as agents of a foreign principal. For the reasons explained above, such a determination would be contrary to 5 U.S.C. § 706(2)(A), (C). The second is that the government determined that the Hamas supporters *were* required to register but decided to do nothing. Such a determination would be contrary to 5 U.S.C. § 706(1).

The Foreign Agents Registration Act is a disclosure statute that requires the government to obtain foreign agent registration information by certain means and to publish the information for the public's benefit. Compl. ¶¶ 18–23, 25–27; 22 U.S.C. §§ 616, 618, 620–21; *see Meese*, 481 U.S. at 469. If the statute indicates "an intent to circumscribe agency enforcement discretion" and "has provided meaningful standards for defining the limits of that discretion," the Court "may require that the agency follow that law." *Heckler*, 470 U.S. at 834–35. The Foreign Agents Registration Act leaves the government with far less freedom than a prosecutor with the "exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974).

The "purpose of the Act was disclosure rather than prohibition." *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 939 (D.C. Cir. 1982); *see* 22 U.S.C. § 612, 614, 616, 621. A person may act as an agent of a foreign principal, but he may only do so if he files a registration statement or is exempt from registration. 22 U.S.C. § 612(a).

This registration requirement would be entirely toothless if the government's duty to ensure compliance was committed to discretion rather than ministerial in nature. To ensure that foreign agent registration information would be disclosed, Congress provided the Attorney General with criminal, civil injunctive, and administrative levers under sections 618(a), (f), and (g).

The Foreign Agents Registration Act's plain text, statutory context, and purpose demonstrate that seeking the Hamas supporter's registration and publishing it for the public to see are discrete agency actions that the government is required to take. Section 618 "clearly reins in the agency's discretion," so that the government's failure to follow it triggers section 706(1) review. *Meina Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015). These subsections cabin the government's discretion and thereby ensure that the statute's fundamental purpose — public disclosure — is advanced and served.

Section 618(f) provides in relevant part:

> [W]henever any agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder, or otherwise is in violation of the subchapter, the Attorney General may make application to the appropriate United States district court for an order enjoining such acts or enjoining such person from continuing to act as an agent of such foreign principal, or for an order requiring compliance with any appropriate provision of the subchapter or regulation thereunder.

22 U.S.C. § 618(f). The word "may" usually implies some degree of discretion.[2]

---

[2] This common-sense principle of statutory construction is by no means invariable and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute. *United States v. Rodgers*, 461 U.S. 677, 706 (1983) (Brennan, J.); *Sierra Club v. Jackson*, 648 F.3d 848, 856

However, text, structure, and purpose make it clear the word "may" only authorizes the government to choose between an order enjoining "such acts" *or* an order enjoining a person from continuing to act as an agent of a foreign principal, *or* a compliance order. "When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v. Harris County*, 529 U.S. 576, 583 (2000) (cleaned up). Doing nothing is not one of the choices. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107–11 (2012) (explaining that under the negative-implication canon, "specification of the one implies the exclusion of the other").

Alternatively, section 618(g) provides that if an agent of a foreign principal files a deficient registration statement, then the Attorney General "shall" notify that person in writing and specify the deficiencies. By using "shall" in this subsection, Congress imposed a discrete obligation on the government. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 400 (2008); *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 n.9 (1995). Of course, section 618(g) does not expressly require the government to notify the Hamas supporters of their obligation to file a registration statement. Read literally, this subsection applies to filed but incomplete or inaccurate registration statements and filings. However, fidelity to the text requires situating "text in context." *Biden v. Nebraska*, 143 S. Ct. 2355, 2378 (2023) (Barrett, J., concurring); *see*

---

(D.C. Cir. 2011); *Galvin v. Del Toro*, 586 F. Supp. 3d 1, 14 (D.D.C. 2022); *see also* "Verb forms," 3 SUTHERLAND STATUTORY CONSTRUCTION § 57:10 (8th ed.).

*also* SCALIA & GARNER, *supra* at 63. Given the statute's structure and purpose, the better reading is that the failure to register is also a deficiency subject to the notice provision.

The Foreign Agents Registration Act was enacted to protect the public's compelling informational interest in knowing how and where agents of foreign principals are at work in the body politic. Congress mandated broad disclosure and charged the government with the duty of gathering, cataloging, and publishing the specified information. The fact that these individuals and organizations are or have been agents of a foreign terrorist organization would seem to be precisely the sort of information Congress intended the government to disclose. But if the government, knowing that these persons are agents of foreign principals, has the discretion to do nothing, then it can, on a case-by-case basis, disrupt the statutory scheme and torpedo the public's right to know.

The government asks this court to construe the Foreign Agents Registration Act without regard for the statutory context, structure, and purpose. *See Yates v. United States*, 574 U.S. 528, 538 (2015). Section 618(g) unmistakably requires the government to notify a registrant in writing if his registration statement is deficient. Yet the government demands that the statute be read to require nothing at all when the Department of Justice knows that a person is acting as a foreign agent without registration. The government latches onto the word "may" in section 618(f) as conferring absolute, unreviewable discretion, *i.e.*, it *may* ask the court for an order enjoining such acts, it *may* ask the court for an order requiring compliance with the

law, or it *may* do nothing.

The absurdity canon militates against construing the Foreign Agents Registration Act, which was enacted to provide the public with comprehensive information about the identities and activities of agents of foreign principals, *see* 22 U.S.C. §§ 612, 614, 616, to delegate the government absolute, unreviewable discretion to do nothing in this case. *See Pub. Citizen,* 491 U.S. at 455; *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 332–33 (D.C. Cir. 2020) (Although "literal interpretation need not rise to the level of 'absurdity' . . . there must be evidence that Congress meant something other than what it literally said before a court can depart from plain meaning."); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998) ("In deciding whether a result is absurd, the Court should consider not only whether that result is contrary to common sense, but also whether it is inconsistent with the clear intentions of the statute's drafters — that is, whether the result is absurd when considered in the particular statutory context.") (citations omitted); SCALIA & GARNER, *supra* at 235 ("What the rule of absurdity seeks to do is what all rules of interpretation seek to do: *make sense* of the text."). Again, the government's discretion to prosecute (or not) the Hamas supporters under section 618(a) is unreviewable. But Congress could not have intended to give them the discretion to look away from known agents of a foreign principal, fail or refuse to seek a section 612 registration statement, and then violate the public's informational rights guaranteed by section 616, for any reason or no reason. Such a holding would irrationally eviscerate the statutory scheme, and Congress could not have intended it.

Under the government's absurd interpretation, Congress assigned it a mandatory duty to act when a person files an inadvertently deficient registration, but no duty at all against a person (such as the Hamas supporters) whom it knows to have intentionally evaded his registration requirements. Simply put, if section 618(f) does not mandate the government's action here, then section 618(g) must. Otherwise, the Foreign Agents Registration Act, which in the government's words, "helps protect the integrity of American democracy by combating covert foreign government influence in our political process," *see* U.S. DEPT. OF JUSTICE, *Protecting the United States from Covert Foreign Influence*, https://perma.cc/5DSW-3JLA, ceases to function.

The government complains that America First Legal demands that the government "root out every instance in which an individual has failed to register." Ds.' MTD 18. This is inaccurate. Rather, America First Legal has pled that the government solicits reports of Foreign Agents Registration Act violations from the public and that it reported the Hamas supporters' violations on August 16, 2024. Compl. ¶ 7. America First Legal's complaint is not about "rooting out" compliance violations generally — it is about the government's failure to act in this case. Congress has exempted from registration: "'Diplomatic or consular officers'; 'Official of foreign government'; 'Staff members of diplomatic or consular officers'; 'Private and nonpolitical activities; solicitation of funds'; 'Religious, scholastic, or scientific pursuits'; 'Defense of foreign government vital to United States defense'; and 'Person qualified to practice law.'" *Irish People*, 684 F.2d at 938 (quoting 22 U.S.C. § 613). For

16

all others, exemption must be "by regulation" under "the criteria" described in the statute. *Irish People*, 684 F.2d at 937–38 (citing 22 U.S.C. § 612(f)). The government has not exempted these Hamas supporters, or persons like them, from registration.

### C.    The Government Has Consented to Administrative Review

Even if the government's inaction were unreviewable under the statute, the Department of Justice has acted in accordance with a host of statutory procedures and affirmatively issued guidance for which administrative procedures apply.

First, the Department has consented via the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*, which creates rules and procedures that bind the government's collection of information from the public. For instance, the Department uses OMB-approved forms for the foreign agent registration statement. *See, e.g.*, DEP'T JUST., *Exhibit A to Registration Statement Pursuant to the Foreign Agents Registration Act of 1938, as Amended*, OMB No. 1124-0006 (2023), https://perma.cc/9YVG-9RLV; DEP'T JUST., *Short Form Registration Statement Pursuant to the Foreign Agents Registration Act of 1938, as Amended*, OMB No. 1124-0005 (2020), https://perma.cc/PL4X-H792. The Department also decided to collect information from the public through a "Report a Violation" notice on its website. DEP'T JUST., *FARA Enforcement* (updated Mar. 15, 2023), https://perma.cc/Q66Z-MCQH. As such, the Department collects information from the public in ways that Congress regulates. Nothing requires the Department to do so; but in choosing to, it is bound by the law. An administrative record would reveal that America First Legal relied on this notice to, in fact, report a violation.

Second, the Department has issued regulations to provide guidance to regulated entities about their need to comply with the Foreign Agents Registration Act. *See* 28 C.F.R. § 5.2 ("Inquiries concerning application of the Act"). Under this regulation, any present or prospective foreign agent "may request from the Assistant Attorney General for National Security a statement of the present enforcement intentions of the Department of Justice under the Act." 28 C.F.R. § 5.2(a). Nothing in the text of the Foreign Agents Registration Act requires the Department to issue advisory opinions. But that it chooses to do so binds it to administrative requirements.

Congress imposed ministerial, non-discretionary administrative duties on the Attorney General and the Department of Justice concerning the registration of known foreign agents, and the publication of foreign agent registration information to the American people. Moreover, the Department consented to administrative review through its administrative actions. They know that the Hamas supporters should register but failed to merely ask them to do so, contrary to law. Accordingly, this Court has jurisdiction.

### III.    The Government's Motion to Excuse Compliance with Local Civil Rule 7(n) Should Be Denied

The government has moved to excuse compliance with Local Civil Rule 7(n) because it has absolute discretion with respect to the Hamas supporters' Foreign Agents Registration Act compliance. D's Mot. Excuse Compliance LCvR 7(n) at 4, ECF No. 5. But this is not the case. To begin with, the Department of Justice's statutory discretion is limited by plain text and statutory context and purpose. Part

II.B, *supra*. Even if the Court agrees that the government's discretion is broader than America First Legal's construction of the Foreign Agents Registration Act allows, the Supreme Court has held that extreme cases of non-enforcement (among others) may be justiciable. *Texas,* 599 U.S. at 683; *Heckler,* 470 U.S. at 833 n.4, 839. This is not a generalized "failure to enforce" case. Rather, this a case where the government had actual and specific knowledge that the Hamas supporters were obligated to register as agents of foreign principals but chose to do nothing. The Hamas supporters did not file a registration statement and America First Legal suffered informational injury as a result. *Accord Akins,* 524 U.S. at 21. Here, the facts and the record must be considered to decide the underlying legal question.

The government also engaged in policies or practices beyond the plain text of the statute. As such, it is bound by such practices; America First Legal relied on such practices to submit information; America First Legal has been uniquely deprived of an available administrative record; and that record is reviewable. Compl. ¶¶ 7, 28, 63, 66.

The government has not contested the factual allegations supporting America First Legal's Complaint, so for the purpose of resolving its Motion to Dismiss, the Court should assume that the Department of Justice knew that the Hamas supporters were agents of (at a minimum) Hamas, the Palestinian Authority, the Palestine Liberation Organization, and Islamic Jihad — yet failed to act. These facts, if not facially dispositive under 5 U.S.C. § 706(1), at least suggest that jurisdictional discovery is needed to determine whether this case is among those that the Court

may entertain. *Texas*, 599 U.S. at 681 ("we do not suggest that federal courts may never entertain cases involving the Executive Branch's alleged failure to make more arrests or bring more prosecutions"); *Heckler*, 470 U.S. at 834–35.

## IV.    America First Legal Should Be Granted Jurisdictional Discovery

Given the government's knowledge of the Hamas supporters' actions on behalf of Hamas, the Palestinian Authority, the Palestine Liberation Organization, Islamic Jihad, and other similar "Palestinian" organizations or persons, its failure to seek registration arguably constitutes the sort of extreme non-enforcement that "exceeds the bounds of enforcement discretion." Compl. ¶¶ 35–60; *Texas,* 599 U.S. at 683. Alternatively, the government's failure to seek their registration at least raises a justiciable question regarding its enforcement policy and whether the groups and individuals were the beneficiary of legal benefits or given a unique legal status. Certainly, the government's conduct in the face of the very strong evidence of their Foreign Agents Registration Act violations raises significant questions.

This Court has broad discretion in its resolution of jurisdictional discovery problems, and the standard for permitting jurisdictional discovery is quite liberal. *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003). The D.C. Circuit has stated that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). "The district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," but, "[i]n order to avoid

burdening a sovereign that proves to be immune from suit . . . jurisdictional discovery should be carefully controlled and limited." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (citations omitted) (quoting *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks omitted)). At least in the Federal Tort Claims Act context, in fact, the D.C. Circuit has "recognized that where 'facts [are] necessary to establish jurisdiction,' plaintiffs *must* be afforded the 'opportunity for discovery of [such] facts . . . prior to' the granting of a motion to dismiss for lack of subject matter jurisdiction." *Loughlin v. United States*, 393 F.3d 155, 167 (D.C. Cir. 2004) (alterations in original) (emphasis added) (citing *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001); *see generally Wesberry v. United States*, 205 F. Supp. 3d 120, 135–36 (D.D.C. 2016).

Facially, at least, the government's failure to seek the Hamas supporters' registration seems like an extreme case of non-enforcement. Compl. ¶¶ 35–60. If the Court is unwilling to rule that the government must comply with Local Civil Rule 7(n), then America First Legal respectfully requests the opportunity for jurisdictional discovery to determine why the government chose not to seek the Hamas supporters' registration as foreign agents. There is very significant evidence suggesting that the Department's treatment of the Hamas supporters was colored improper considerations or bias. *See, e.g.*, *America First Legal Demands Investigation in the DOJ's Failure to Prosecute Pro-Hamas Violence* (Jan. 5, 2024), https://perma.cc/HV8T-BLY5. Limited discovery consisting of ten interrogatories and document requests (including subparts) and three depositions should be sufficient to

determine whether the government engaged in the sort of conduct that the Supreme Court has declared justiciable.

## CONCLUSION

For the foregoing reasons, the Court should DENY the government's Motions to Dismiss and to Excuse Compliance with Local Civil Rule 7(n). Alternatively, the Court should GRANT America First Legal's request for jurisdictional discovery.

Dated: January 21, 2025                    Respectfully submitted,

<div style="margin-left:auto;">

*/s/ Michael Ding*
Reed D. Rubinstein (D.C. Bar No. 400153)
Michael Ding (D.C. Bar No. 1027252)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
Tel.: (202) 964-3721
E-mail: Reed.Rubinstein@aflegal.org
E-mail: Michael.Ding@aflegal.org

*Counsel for America First Legal Foundation*

</div>

22

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2025, I filed the foregoing with the Clerk of the Court electronically via the Court's ECF system which sent notification of such filing to counsel of record for all parties.

<u>/s/ *Michael Ding*</u>
AMERICA FIRST LEGAL FOUNDATION

23